IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARQUES HUBBARD,

                              Plaintiff,

              v.                                          OPINION and ORDER

TANYA AGUILAR and WISCONSIN DEPARTMENT                    24-cv-921-jdp
OF CORRECTIONS,

                              Defendants.

---

Plaintiff Marques Hubbard, proceeding without counsel, is a prisoner at Stanley Correctional Institution. He alleges that correctional officer Tanya Aguilar wrote a false conduct report accusing Hubbard of soliciting her for drugs. Hubbard has made an initial partial payment of the filing fee as directed by the court.

The next step is for me to screen Hubbard's complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the case because Hubbard does not state a claim for relief under federal law. But I will give Hubbard a chance to submit an amended complaint that addresses the deficiencies identified in this order.

ALLEGATIONS OF FACT

Hubbard is a prisoner at Stanley Correctional Institution, where defendant Tanya Aguilar was a correctional officer. Aguilar was involved in an inappropriate relationship with

another inmate. At the behest of that inmate, Aguilar wrote a false conduct report accusing Hubbard of soliciting her to bring marijuana into the institution.

Prison staff placed Hubbard on temporary lock-up status while they investigated the conduct report. After three days, staff moved Hubbard out of temporary lock-up status to a new unit while continuing the investigation. Inmates on the new unit heard about the conduct report and began calling Hubbard a "snitch."

Eventually, the Department of Corrections concluded its investigation and told Hubbard the conduct report would be dismissed. Aguilar was terminated. Hubbard had to ask several times to get a copy of the conduct report, but he eventually received one. The situation caused Hubbard emotional distress. He also felt unsafe because staff members made jokes about Hubbard being a solicitor of drugs and inmates labelled him a snitch.

ANALYSIS

Hubbard contends that defendants violated his constitutional rights by subjecting him to a false conduct report and by causing him to be labelled as a drug solicitor and a snitch. He also contends that defendants violated state law by intentionally or negligently inflicting emotional distress and by defaming him.

A.  Constitutional claims

Hubbard's allegations that Aguilar wrote a false conduct report are not sufficient to state a plausible claim that Aguilar violated his constitutional rights. Writing a false conduct report may violate the First Amendment if prison staff do it in retaliation for an inmate's protected activity. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). But Hubbard alleges that Aguilar wrote the false conduct report because another inmate asked her to, not to retaliate

2

against Hubbard. Nor does the false conduct report violate Hubbard's due process rights under the Fourteenth Amendment. The court of appeals has held that a false conduct report does not alone amount to a denial of due process because the inmate has the ability to litigate the truthfulness of the report through the hearing process. *Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006). Hubbard's three-day stint in temporary lock-up status also fails to support a constitutional claim; inmates do not have a protected interest in avoiding short-term placement in segregated settings. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (short-term placements in segregation do "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," triggering the protections of the Due Process Clause).

That leaves Hubbard's allegations that defendants labelled him as a drug solicitor and a snitch. The Eighth Amendment prohibits prison officials from consciously disregarding a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). An officer may violate the Eighth Amendment if he deliberately incites inmates to attack another inmate by falsely labelling the inmate a snitch. *See Childs v. Rudolph*, No. 22-cv-572-jdp, 2024 WL 639859 (W.D. Wis. Feb. 15, 2024) (*citing Turner v. Pollard*, 564 F. App'x 234, 238–39 (7th Cir. 2014) *and citing Babcock v. White*, 102 F.3d 267, 272–73 (7th Cir. 1996)). But in this case, Hubbard hasn't alleged that any staff member called him a solicitor or a snitch in front of other inmates, so his allegations don't support a reasonable inference that staff members were deliberately urging other inmates to attack Hubbard. I will not allow Hubbard to proceed on constitutional claims based on these allegations either.

Hubbard's complaint has another problem as well. Hubbard alleges that "staff members" made jokes about being a solicitor of drugs, but he doesn't name any of the

individual staff members involved. "Individual liability under § 1983. . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). If he chooses to amend his complaint, Hubbard should name each individual defendant who took an action that violated his rights. The Department of Corrections is also not a proper defendant in a federal civil rights action. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Hubbard should not name the DOC as a defendant in his amended complaint.

**B. State-law claims**

Hubbard also asserts claims under Wisconsin law for intentional or negligent infliction of emotional distress and for defamation. Hubbard asserts in the complaint that this court has jurisdiction under 28 U.S.C. § 1332, but his own allegations undercut that: he says that the amount in controversy in this case is only $50,000, which is less than the $75,000 needed for diversity jurisdiction. Nor is jurisdiction proper under 28 U.S.C. § 1367. When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). I'll follow that practice here and relinquish jurisdiction over Hubbard's state-law claims without evaluating the merits.

Hubbard may replead these state-law claims in his amended complaint if he believes that there is a basis for the court to exercise jurisdiction over them.

CONCLUSION

I will allow Hubbard to file an amended complaint that fixes the above pleading problems. In drafting his amended complaint, Hubbard should remember to:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in or cause a violation of his rights. Hubbard must take care to allege what each defendant did, or failed to do, to violate his rights.

- Hubbard should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Hubbard believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption, if that information is available to him. If Hubbard must refer to a defendant as a Doe defendant, he should describe that individual as specifically as possible in the amended complaint's caption (e.g., "John Doe Day Shift Correctional Officer #1").

ORDER

IT IS ORDERED that:

1. Plaintiff Marques Hubbard's complaint, Dkt. 1, is DISMISSED for failure to state a claim.

2. Plaintiff may have until November 19, 2025, to submit an amended complaint that fixes the problems identified in this order.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss this case.

6. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. The clerk of court is directed to send plaintiff a copy of the court's prisoner complaint form.

Entered October 22, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge